## Livingston County Bank v. First State Bank

Appeal from Livingston Circuit Court.

J. F. Gordon, Circuit Judge.

From the judgment defendants appeal and plaintiffs took a cross-appeal. Affirmed on the original appeal and reversed on the cross-appeal.

1. Sales—Construction of Sale—Property Passing.—Defendant bank contracted to sell to plaintiff bank its entire capital stock, and all notes, bills of discount, cash, etc., which might be on hand on January 1, 1907, together with its banking house, fixtures, books, papers, and property of every kind belonging to defendant, but the contract provided that defendant, in addition to the purchase price, should have all its earnings up to and including December 31, 1906, and should continue the business to January 1st, and no longer. Held, that defendant's property of every description passed under

the contract, and two judgments which were obtained theretofore, and had been considered practically worthless, but which were sold in December, 1906, and the proceeds distributed to defendant's stockholders before January 1st, passed under the contract, so that plaintiff was entitled to the proceeds, they not being "earnings" within the meaning of the contract, which word, construed to effectuate the intention of the parties, meant earnings of the bank in the ordinary course of its business between November 1st and January 1st, and plaintiff was also entitled to that part of the interest on notes, discounted by defendant after November 1st, which matured after January 1st, which represented the time between January 1st and their maturity irrespective of when such interest was collected by defendant.

2.   Bills and Notes—Sale—Right of Buyer.—A bank purchasing all the assets and property of another bank which might be on hand on a designated future date under a contract providing that the selling bank in addition to the price should have all its earnings up to the day before the designated future date and should continue the business to the designated future date was not entitled to any interest received by the selling bank before the date of the contract on notes or bills discounted by it before that date, no matter when such notes or bills matured.

HENDRICK, MILLER & MARBLE, WILSON & LANDRUM and JOHN K. HENDRICK for appellant.

C. C. GRASSHAM and BERRY & THRELKELD for appellee.

Opinion of the Court by Judge Carroll—Affirming.

On the 1st day of November, 1906, the First State Bank and the Livingston County Bank entered into a written contract, by the terms of which the state bank purchased all the assets and property of the Livingston Bank. So much of the contract as is material to the issues here involved is as follows: "This contract and agreement made and entered into this 1st day of November, 1906, by and between the Livingston County Bank, * * * and the First State Bank,

* * * Witnesseth: That for and in consideration of
$140 per share of $100 each, the Livingston County
Bank has this day sold and does hereby sell and con-
vey unto the First State Bank the entire capital stock
of $15,000, of the said Livingston  County Bank, to-
gether with all notes, papers, bills of discount, cash
and accounts which belong to the party of the first
part which may be on hand January 1st, 1907; and
its banking house and lot in the town of Smithland,
Kentucky, together with all its furniture, safe, vaults
and banking fixtures, books, papers, and property of
every kind and character belonging to the said Liv-
ingston  County  Bank.   The  Livingston  County
Bank,  in   addition   to   the  $140  per   share  of
$100 each,  shall  have  all  earnings  of  said Liv-
ingston County Bank up to and including the 31st day
of December, 1906.   The Livingston County Bank
by virtue of the above sale and conveyance agrees to
turn over to the First State Bank on the 1st day of
January, 1907, the $3,000 surplus fund it now has on
hand, and all cash that may be on deposit in the said
Livingston County Bank, and due from its corres-
pondent banks of which after said date the party of
the second part shall hold  the same for its depositors
and persons entitled thereto and for which it shall be
responsible.   The Livingston County Bank shall con-

tinue its business as a banking institution up to the
1st day of January, 1907, and no longer; and its
stockholders shall have all the earnings of said bank
up to and including the 31st day of December, 1906.''

In April, 1907, the First State Bank filed its peti-
tion in equity against the Livingston County Bank, in
which, after setting up the contract, it averred that
the Livingston bank refused to deliver to it two judg-
ments, aggregating $2,600 it had obtained against

parties upon notes executed by them to the bank. It
further averred that between July 14, 1906, and the
1st day of January, 1907, the Livingston bank had
discounted a large number of notes and bills that
did not fall due until after January 1, 1907, and it
failed and refused to pay over to the state bank any
part of the discount received and collected on these
notes, although it was entitled to such proportion of
the discounts as was represented by the time the bills
and notes ran after January 1, 1907, until maturity.
With the petition was filed a statement showing each
note that did not mature until after January 1, 1907,
and the amount of interest or discount which should
have been paid by the Livingston bank between Jan-
uary 1, 1907, and the maturity of the paper. The an-
swer of the Livingston bank was substantially a trav-
erse of the averments of the petition, and a denial
that the state bank was entitled to recover from it
anything on account of the matter set up in the peti-
tion. The case having been submitted in the lower
court upon the pleadings and evidence, it was ad-
judged that the state bank was not entitled to recover
anything on account of the claim for interest, but was
entitled to have transferred to it the two judgments,
or, if this could not be done to recover the amount re-
ceived for the judgments from the persons to whom
it sold them in December, 1906.

Taking up first the matter of the judgments, we
agree with the lower court in its conclusion respect-
ing them. These judgments were obtained by the Liv-
ingston bank long before it entered into the contract
with the state bank, and at that time they were re-
garded as practically worthless, as the bank had made
a number of efforts, but without success, to collect
them, but in December, 1906, it sold these judgments

for $260. That these judgments were embraced in the contract we have little doubt. At the time the contract was entered into these judgments, although considered uncollectible, were the property of the Livingston bank and a part of its assets. The fact that they were treated as practically worthless does not affect the question. That they were not entirely worthless is evidenced by the fact that the bank received for them in December, 1906, $260. With the single exception of the earnings of the Livingston bank between November 1st and December 31st, all the property and assets of every kind and character that it had or owned on November 1, 1906, passed under the contract to the state bank, to be delivered to it on January 1, 1907. The language of the contract, by which the Livingston bank sold its banking house and lot, together with all its furniture, safe, vaults, banking fixtures, books, papers, and property of every kind and character belonging to the Livingston bank, makes it plain that it was intended by the parties that every species of property owned by or in which the Livingston bank had an interest was transferred to the First State Bank. Nor was the $260 received by the Livingston bank for these two judgments a part of its earnings within the fair meaning of the contract. The word ''earnings'' contemplated the earnings of the bank in the usual and ordinary course of its business transacted between November 1 and January 1, 1907. If the bank after November 1, 1906, had collected the full amount of these judgments, we have no doubt that the money so collected would have passed under the contract to the state bank. Although the Livingston bank had the right under the contract to carry on its business until January 1, 1907, all of its assets and property passed to

the state bank on November 1st, subject to the right of the Livingston bank to carry on business in its own name the same as before the contract was made, and retain whatever money it earned after November 1st.

The point is made by counsel for the Livingston bank that it was to deliver to the state bank all notes and bills of discount, cash, and accounts which belonged to it, and which should be on hand January 1, 1907; and it is argued that the $260 received for these two judgments was not on hand on January 1, 1907, as it had been distributed to the stockholders to reimburse them in part for the dividends they had previously lost by reason of the failure to realize on these judgments. We are not impressed with the soundness of this argument. The Livingston bank could not, after November 1, 1906, convert into money any of the property it owned on November 1st, and distribute the same among its stockholders, and then set up that because the money so distributed was not on hand on January 1, 1907, the First State Bank was not entitled to it. The Livingston bank had as much right and authority to convert into money any note or bill in its vault, and distribute the proceeds among its stockholders and refuse to account for it to the First State Bank, as it did to dispose in this way of the money realized on these judgments. They were as much the property of the state bank as any other asset owned by it on November 1, 1906.

In considering whether or not the state bank is entitled to that part of the interest that accrued after January 1, 1907, on notes taken prior to December 31st, we may with propriety look to the purpose the parties had in mind in entering into the contract, with a view to ascertaining the meaning of the word "earnings" as used in the writing between them.

It was contemplated by the parties, and so expressed in the contract, that the Livingston Bank should cease to do business on January 1, 1907. On that day its functions as a banking institution terminated, and all of its assets and property of every description was delivered to the state bank. This being true, it can not fairly or reasonably be said that it had the right to retain the interest that was earned after that date, although the interest may have been collected by it prior to that time. The contract gave to the Livingston bank the right to retain any earnings made by it in the usual course of business between November 1, 1906, and January 1, 1907; but on January 1, 1907, as all its notes and bills then on hand were surrendered to and became the property of the state bank, this bank was entitled to interest on all the notes and bills that accrued after it became the owner of them. If the argument of the Livingston bank is sound, and a correct interpretation of the contract, then the officers of this bank could, in December, 1906, have used all of the obtainable money of the bank in purchasing or discounting paper that would not fall due for 6 or 12 months after January 1, 1907, and thereby deprive the state bank of any income from this paper until its maturity. But it seems to us that the contract is not capable of a construction that would authorize this method of depriving the state bank of the interest it should receive after January 1, 1907. The word "earnings" in the contract is not a technical term, nor was it used in a technical sense. It was employed by the parties for the purpose of conferring upon the Livingston bank the right to what it might earn up to January 1, 1907, when under the contract it should cease to do business. If the Livingston bank on December 1, 1906,

lent $1,000 for six months, and retained $30 as discount or interest for the period the note was to run, this $30 represented the earnings derived from the loan or discount from its date until its maturity. The $1,000 did not earn in one month $30. It only earned in that time one-sixth of $30, and the other five-sixths was earned in the remaining time before the maturity of the note. The time when the interest was taken out or collected is not the controlling feature of this contract. It was not material whether it was retained in advance or collected at the maturity of the paper. The interest charged for money, whether it be collected when the loan is made or when it matures and is paid, is not really earned until the maturity of the paper. It is exacted as compensation for the use of the money for the time it is lent, and the money loaned earns for the lender interest every day until it is returned to him. If the Livingston bank, on July 1, 1906, had lent $1,000 for a year, not taking out or collecting the interest in advance, but letting it run to be paid at the maturity of the paper, or on July 1, 1907, the state bank would not be entitled to all the interest merely because it was collected by it, but would be obliged to account to the Livingston bank for interest for six months, or until January 1, 1907, as that much of the interest was earned by the Livingston bank.

The word "earnings" in the contract should be given such a meaning as will effectuate the intention of the parties when the contract was entered into, and manifestly it could not have been in the contemplation of the parties that the Livingston bank, on January 1, 1907, might hand over a lot of noninterest-bearing paper, or rather paper upon which the state bank would not receive any interest at all. Unless it was

the intention of the parties to limit the interest or discount the Livingston bank was entitled to have that portion of it that accrued from the date of the note to January 1st, there was no reason why the contract should expressly confine the earnings to December 31, 1906. If the Livingston bank should be allowed to retain the interest collected by it for the full time the notes were to run, and upon notes that did not mature until after January 1st, it would be retaining interest that was not fully earned before January 1, 1907. If the contract stipulated that the Livingston bank should have all discount or interest collected by it to January 1, 1907, the contention of its counsel would be correct, but the contract does not so read. The word "earnings" can not be given the same meaning as the words "interest collected" or "discount collected." Nor does the fact that the Livingston bank on December 31, 1906, declared a dividend, and distributed among the stockholders all the interest and discount collected between November 1, 1906, and January 1, 1907, affect the question. The Livingston bank had a right to declare a dividend of all its earnings up to January 1st, but this did not carry with it the authority to declare a dividend on earnings after January 1, 1907. There is no controversy about the legal proposition that dividends declared belong to the owner of the stock at the time the dividend is declared. But this authority is not applicable to this case, which must be adjudged upon a fair construction of the contract entered into. And giving to this contract such construction, our conclusion is that the state bank was entitled to receive from the Livingston bank, on all notes and bills discounted by it after November 1, 1906, and that did not mature until after January 1, 1907, that propor-

tionate part of the interest that was collected or received by the Livingston bank for the time between January 1st and the maturity of the notes.

Wherefore, the judgment is affirmed on the original appeal, and reversed on the cross-appeal, with directions to proceed in conformity with this opinion.

RESPONSE FOR PETITION FOR REHEARING—Overruled.

CARROLL, J.   In the opinion we said: "And giving to this contract such construction, our conclusion is that the State Bank was entitled to receive from the Livingston Bank on all notes and bills discounted by it after November 1, 1906, and that did not mature until after January 1, 1907, that proportionate part of the interest that was collected or received by the Livingston Bank for the time between January 1st and the maturity of the notes."

We thought this language made it clear that the State Bank was only entitled to interest on notes and bills discounted by the Livingston Bank after November 1st.   But, that there may be no possible room for doubt, we now add that the State Bank is not entitled to any interest or discount collected or received by the Livingston Bank before November 1st on notes or bills discounted by it before November 1, 1906, no matter when such notes or bills matured.   These bills and notes the State Bank knew the condition of when it made the purchase.

Petition for rehearing overruled.